```
             UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
                Civil No. 09-1067(DSD/FLN)
```

Gaia Leasing LLC,

       Plaintiff,

v.                                **ORDER**

Wendelta, Inc.,

       Defendant.

      Kevin M. Busch, Esq., Terese A. West, Esq. and Moss & Barnett, 90 South Seventh Street, Suite 4800, Minneapolis, MN 55402, counsel for plaintiff.

      Ashley A. Wenger, Esq., Sonia L. Miller-Van Oort, Esq. and Flynn, Gaskins & Bennett, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402 and Daniel W. Van Horn, Esq. and Butler, Snow, O'Mara, Stevens & Cannada, PLLC, 6076 Poplar Avenue, Suite 500, Memphis, TN 38119, counsel for defendant.

This matter is before the court upon defendant Wendelta Inc.'s[1] ("Wendelta") motion to dismiss or refer the case to bankruptcy court. Based upon a review of the file, record and proceedings herein, and for the following reasons, the court denies Wendelta's motion.

---

[1] Wendelta is a Wendy's restaurant franchise operator incorporated in Mississippi with its principal offices in Memphis, Tennessee.

**BACKGROUND**

In this contract dispute, plaintiff Gaia Leasing LLC[2] ("Gaia") claims that Wendelta defaulted on payments assigned to Gaia by non-party LGI Energy Solutions, Inc.[3] ("LGI"). On November 10, 2008, LGI and Wendelta executed a Master Lease Agreement[4] ("Lease Agreement") wherein Wendelta agreed to rent energy-management equipment from LGI. (See Compl. Ex. A.) The Lease Agreement incorporated Equipment Schedule 1G ("Schedule 1G"), which specified a sixty-month lease term beginning April 1, 2009, at a total cost of $408,900. (Id. Ex. B.) Additionally, LGI and Wendelta entered into certain service agreements.[5] (See Answer Exs. A–C.)

The Lease Agreement expressly contemplated the assignment of LGI's contract rights. Specifically, Wendelta acknowledged that "the terms and conditions of this Lease Agreement have been fixed

---

[2] Gaia is a Delaware limited-liability company with its principal offices in Minneapolis, Minnesota.

[3] LGI is an energy-services company incorporated in Illinois with its principal offices in Minneapolis, Minnesota. LGI provides services and equipment for energy management and monitoring to retail customers.

[4] Some documents refer to the Lease Agreement as the "Master Rental Agreement."

[5] In the "Wendy's Franchisee Energy Services Agreement", LGI agreed to provide energy information, utility-bill payment, facility monitoring and control and utility-procurement services to Wendelta. (Answer Ex. A.) In the "Contingent Precedent," LGI agreed to install equipment at Wendelta franchise locations and to demonstrate savings to Wendelta by March 16, 2009. (Id. Ex. B.) Lastly, the "Incremental Savings Fees Agreement" addressed deficient or excess annual savings. (Id. Ex. C.)

2

in anticipation of possible assignment of [LGI's] rights under this Agreement and in and to the Equipment ...." (Compl. Ex. A ¶ 22.) Furthermore, the Lease Agreement included a "hell-or-high-water" clause, which required Wendelta to pay an assignee all sums due to LGI, "nothwithstanding any defense, set-off or counterclaim ... that [Wendelta] shall have against [LGI]," after Wendelta received notification of the assignment. (Id.)

On November 13, 2008, LGI and Gaia signed an "Agreement for Purchase and Sale of Equipment and Assignment of Lease" ("Assignment Agreement") and a "Bill of Sale and Assignment" ("Bill of Sale") whereby LGI allegedly transferred its interest in the equipment and lease payments to Gaia. The two documents bear different dates. The Assignment Agreement states that it was "made as of April 1, 2009, (the 'Effective Date')" and became "effective as of the Effective Date set forth above." (Id. Ex. C.) The Bill of Sale states that LGI "does hereby unconditionally and irrevocably sell [and] ... assign ... [to Gaia] all of [LGI's] legal, beneficial and other right, title and interest in [the equipment] ... as of [November 13, 2008]." (Id.)

On December 11, 2008, LGI notified its creditors that it had terminated operations and surrendered its assets to its bank. LGI's creditors filed an involuntary bankruptcy petition under Chapter 7 on February 6, 2009. See In re LGI Energy Solutions, Bky. No. 09-40665 (Bankr. D. Minn. Feb. 6, 2009). Gaia notified

Wendelta of the assignment on March 30, 3009. (Compl. Ex. D.) Wendelta defaulted on the Lease Agreement in April 2009. (See Compl. ¶ 7.)

Gaia filed the instant complaint in state court on April 16, 2009, asserting breach of contract. Wendelta timely removed. On July 7, 2009, Wendelta filed an amended motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure; refer the case to the bankruptcy court under 28 U.S.C. § 157(a); and join or substitute LGI as the real party in interest under Rule 17 of the Federal Rules of Civil Procedure.

**DISCUSSION**

**I. Subject-Matter Jurisdiction**

**A. Rule 12(b)(1) Standard**

The court must dismiss any action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A party may challenge subject-matter jurisdiction on the face of the complaint or for the factual truth of the allegations. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). In this case, Wendelta challenges the factual validity of the complaint.[6] (Cf. Def's Mem. Supp. 4-5.) A factual challenge requires the court to determine whether the facts actually support jurisdiction, and the plaintiff bears

---

[6] Wendelta's motion also fails if treated as a facial challenge, as noted below. See Osborn, 918 F.2d at 729 n.6 (court applies 12(b)(6) standard to facial 12(b)(1) challenges).

the burden of establishing subject-matter jurisdiction. See Osborn v. United States, 918 F.2d 724, 729-30 (8th Cir. 1990). Thus, the court may consider matters outside the pleadings without converting the motion to one for summary judgment. Id.

**B. Analysis**

Wendelta contends that the court lacks subject-matter jurisdiction over this case because the property at issue is part of the LGI bankruptcy estate. According to Wendelta, the assignment of LGI's interests in the equipment and lease-payment rights to Gaia was to occur on April 1, 2009. Wendelta argues, however, that the property became a part of the LGI bankruptcy estate on February 6, 2009, and that the automatic-stay provision of 11 U.S.C. § 362 prevented the April 1, 2009, assignment. See 11 U.S.C. § 362(a)(3) (prohibiting actions to obtain possession or exercise control over property of bankruptcy estate). As a result, Wendelta maintains that Gaia's claim violates the automatic stay because it was filed after LGI's bankruptcy petition. See Fields v. Demint, 107 B.R. 194, 195 (W.D. Mo. 1989) (filing of claim after bankruptcy petition violates automatic stay). According to Wendelta, the court lacks subject-matter jurisdiction to hear this subsequently filed civil action.

Gaia responds that the automatic-stay provision does not apply because the assignment took place on November 13, 2008, and, therefore, the property never became a part of the LGI bankruptcy

5

estate. To determine whether the disputed assignment became effective, the court applies Minnesota law, which provides that an assignment takes place when the assignor manifests an intent to make a present transfer without further action and without retaining control of the right assigned. <u>Guaranty State Bank of St. Paul v. Lindquist</u>, 304 N.W.2d 278, 280-81 (Minn. 1980); <u>Minn. Mut. Life Ins. Co. v. Anderson</u>, 504 N.W.2d 284, 286 (Minn. Ct. App. 1993). While the Assignment Agreement's Effective Date is April 1, 2009, the Bill of Sale states that LGI "does hereby unconditionally and irrevocably sell [and] ... assign ... all of [LGI's] legal, beneficial and other right, title and interest" in the equipment described. (Compl. Ex. C.) This absolute language indicates an immediate assignment from LGI to Gaia, with no control retained by LGI. Indeed, neither party alleges that LGI maintained any control over the leased equipment after November 13, 2008. Accordingly, the Assignment Agreement and Bill of Sale demonstrate that LGI assigned the equipment and right to lease payments to Gaia on November 13, 2008.

Evidence outside the pleadings further supports this finding. For example, affidavit testimony indicates that the April 1, 2009, date on the Assignment Agreement is a typographical error that should read November 13, 2008. (Hipskind Aff. ¶ 4.) Furthermore, a UCC financing statement filed with the Mississippi Secretary of

State indicates that Gaia paid LGI in full on November 14, 2008.[7] (West Aff. Ex. A.) The payment demonstrates that ownership of the leased equipment transferred to Gaia before the bankruptcy proceeding commenced. Thus, Gaia has shown that the equipment was not part of the bankruptcy estate and was therefore not subject to the automatic-stay provision. Accordingly, the court denies Wendelta's motion to dismiss for lack of subject-matter jurisdiction.[8]

## II. Failure to State a Claim

Wendelta next argues that the court should dismiss Gaia's claim pursuant to Rule 12(b)(6) because Gaia never acquired legally enforceable rights against Wendelta.

### A. Rule 12(b)(6) Standard

A complaint must, after taking all facts alleged in the complaint as true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a complaint need not contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic

---

[7] Gaia submitted a printed copy of the Mississippi Secretary of State's website showing that on November 18, 2008, a filing occurred with Gaia as the secured party and Wendelta as the debtor. (West Aff. Ex. A.)

[8] Wendelta also argues that LGI is the real party in interest and must be joined or substituted for Gaia in this action. See Fed. R. Civ. P. 17. An assignee becomes the real party in interest upon a valid assignment. 4 Moore's Federal Practice § 17.11[1]. Because the court determines that LGI assigned its rights to Gaia, the court does not substitute LGI as the real party in interest.

7

recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id. at 1950 (quotations and citation omitted).

**B. Evidence Considered**

As a preliminary matter, the court must determine what evidence it may consider with respect to this motion. The court does not consider matters outside the pleadings under Rule 12(b)(6). See Fed. R. Civ. P. 12(d) (when outside matters presented and not excluded, motion converts to summary judgment). In this case, the pleadings consist of the complaint, the Lease Agreement, Schedule 1G, the Assignment Agreement and the Bill of Sale. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (defining "pleadings" as complaint, exhibits attached to complaint, matters of public record and orders).

The court may also consider matters embraced by the pleadings, including documents to which the complaint refers and which are incorporated by reference. Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 967 F. Supp. 1148, 1152 (D. Minn. 1997); accord Porous Media, 186 F.3d at 1079. The complaint, Lease Agreement and assignment documents do not incorporate or reference the service agreements. Accordingly, the court excludes the service agreements from consideration for purposes of Rule 12(b)(6).[9] Additionally, the court may not consider written evidence that does more than merely reiterate the pleadings. BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 687 (8th Cir. 2003). Affidavits from both parties go beyond reiteration of the pleadings. Accordingly, the court does not consider the affidavits.

## C. Analysis

Under Minnesota law, a breach of contract claim requires the plaintiff to establish formation of a contract, performance of conditions precedent and a breach. See Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A., 756 N.W.2d 907, 918 (Minn. Ct. App. 2008). Wendelta asserts that Gaia cannot claim breach of contract because Gaia acquired no legally enforceable rights under the Lease Agreement between LGI and Wendelta. See N. Nat'l Bank of

---

[9] Wendelta does not argue that the service agreements are properly before the court for purposes of Rule 12(b)(6). (See Def's Mem. Supp. 2 n.1.)

9

Bemidji v. N. Minn. Nat'l Bank of Duluth, 70 N.W.2d 118, 122 (Minn. 1955). ("As a general rule, strangers to a contract acquire no rights ...."). Gaia responds that it acquired rights under the contract through the November 13, 2008, assignment and contends that it satisfies each element of a breach of contract claim.

Wendelta first asserts that Gaia cannot enforce the Lease Agreement because, under the automatic-stay provision of § 362, the assignment from LGI to Gaia never occurred. The court has already determined, however, that the date and language of the Bill of Sale demonstrate that LGI assigned it rights to the equipment to Gaia on November 13, 2008. Therefore, Wendelta's first argument fails. Wendelta next argues that, when viewed in the context of the course of dealings between LGI and Wendelta, including the service agreements, the November 13, 2008, agreement did not demonstrate a present intent by LGI to make an assignment to Gaia. The court has already determined, however, that the service agreements are beyond the scope of review on this 12(b)(6) motion. Therefore, Wendelta's second argument fails, and the court determines that Gaia acquired "all of [LGI's] legal, beneficial and other right[s]" in the equipment upon assignment. (Compl. Ex. C.) Accordingly, Gaia has made a plausible claim of its right to enforce the Lease Agreement.

The only disputed element of Gaia's breach of contract claim is the performance of conditions precedent. Wendelta argues that

LGI never demonstrated savings, as specified in the Condition Precedent to the service agreements. The service agreements, however, are not properly before the court for purposes of 12(b)(6). Therefore, Gaia has alleged facts sufficient to raise its breach of contract claim to the level of plausibility. Accordingly, the court denies Wendelta's motion to dismiss for failure to state a claim upon which relief can be granted.

**III. Transfer to Bankruptcy Court**

Wendelta next argues that the court must refer this action to the bankruptcy court pursuant to 28 U.S.C. § 157 and Local Bankruptcy Rule 1070-1 as a core proceeding. The district court has jurisdiction over all matters arising under, arising in or related to cases under Title 11 of the United States Code. See 28 U.S.C. § 1334(b). Additionally, "[b]ankruptcy judges may hear and determine ... all core proceedings ... referred under subsection (a) of [28 U.S.C. § 157]." See 28 U.S.C. § 157(a), (b). A core proceeding arises only in bankruptcy or is created by federal bankruptcy law. Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 773 (8th Cir. 1995).

Wendelta argues that Gaia's claim is a core proceeding because the equipment and lease payments are property of the bankruptcy estate. The court has already determined, however, that LGI assigned its rights to the equipment to Gaia on November 13, 2008, and that this dispute arises outside of the bankruptcy proceeding.

11

Further, Gaia's claim concerns interpretation of a contract and assignment of rights under state law, not federal bankruptcy law. Accordingly, this case is not a core proceeding, and the court denies Wendelta's motion to refer the case to the bankruptcy court.

**CONCLUSION**

Based on the above **IT IS HEREBY ORDERED** that Wendelta's motion to dismiss, or alternatively, refer the case to bankruptcy court [Doc. No. 12] is denied.

Dated:  December 11, 2009

s/David S. Doty

David S. Doty, Judge

United States District Court
