UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-1067(DSD/FLN)

Gaia Leasing LLC,

       Plaintiff,

v.  **ORDER**

Wendelta, Inc.,

       Defendant.

    Kevin M. Busch, Esq., Terese A. West, Esq. and Moss & Barnett, 90 South Seventh Street, Suite 4800, Minneapolis, MN 55402, counsel for plaintiff.

    Sonia L. Miller-Van Oort, Esq. and Flynn, Gaskins & Bennett, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402 and Daniel W. Van Horn, Esq. and Butler, Snow, O'Mara, Stevens & Cannada, PLLC, 6076 Poplar Avenue, Suite 500, Memphis, TN 38119, counsel for defendant.

This matter is before the court upon cross motions for summary judgment. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants summary judgment in favor of Wendelta Inc. (Wendelta).

**BACKGROUND**

In this contract dispute, plaintiff Gaia Leasing LLC (Gaia) claims that Wendelta defaulted on payments assigned to Gaia by non-party LGI Energy Solutions, Inc. (LGI). Wendelta is a franchisee of Wendy's restaurants. LGI provides energy-monitoring

equipment and servicing to commercial customers.  LGI is owned by Dean Leischow.  Leischow also formed and was the largest individual owner of Gaia, which acquired leases from LGI through assignment for value.  Leischow Dep 63; Hipskind Aff. 40, 47.  Gaia understood that LGI's commercial customers needed monitoring services for the equipment.  Hipskind Aff. 58, 80.

On November 7, 2008, LGI sent documents to Wendelta concerning LGI's proposal to enter into an energy-monitoring contract.  The documents were drafts of a Master Lease Agreement (Lease Agreement), an Energy Services Agreement (Services Agreement), an Incremental Fee Savings Agreement (Savings Agreement), Equipment Schedule 1G (Schedule 1G) and the Condition Precedent.  LGI described the Contingent Precedent: "and last but most important, the Contingent precedent (our special deal)."  On November 10, 2008, after minor changes, LGI and Wendelta concurrently executed the documents.[1]

The Lease Agreement incorporates Schedule 1G, which specifies a sixty-month lease term beginning April 1, 2009.  Dep. Exs. 41, 42, ECF No. 53-3.  Wendelta acknowledged that "the terms and conditions of this Lease Agreement have been fixed in anticipation of possible assignment of [LGI's] rights under this Agreement and

---

[1] Wendelta's argument that LGI fraudulently included new terms in the contract is without merit.  A party to a contract may not avoid it by claiming it did not read the contract.  See Gartner v. Eikill, 319 N.W.2d 397, 398 (Minn. 1982).

in and to the Equipment ...." Dep. Ex. 42, ¶ 22. Furthermore, the Lease Agreement included a "hell-or-high-water" clause, which required Wendelta to pay an assignee all sums due to LGI, "nothwithstanding any defense, set-off or counterclaim ... that [Wendelta] shall have against [LGI]." Id.

The Services Agreement states that LGI will provide several monitoring, procurement and payment services using the equipment addressed by the Lease Agreement. It states that "Wendelta wishes to utilize LGI's services to manage its utility costs [and] Wendelta wishes LGI to install and operate certain Energy Management equipment ("EMS") in certain of its facilities." Dep. Ex. 14, ECF No. 53-2. It expressly references the Lease Agreement and Savings Agreement and further states that "[t]his agreement, together with the [l]etter of [i]ntent and all agreements and documents incorporated by reference herein, embodies the entire agreement." Id. ¶¶ 2, 13.

The Contingent Precedent states that "LGI will install [the Equipment] in 29 of the Wendelta locations on or before December 15, 2008." Dep Ex. 44. The Contingent Precedent further states:

> On or before March 16, 2009, LGI will provide a savings report utilizing the savings calculation .... If savings are less than $275 ... or LGI has failed to adequately meet the Service levels below, the Satisfying Contingent Precedent terms will be extended until June 15, 2009. If the Satisfying Contingent Precedent Terms are not met at that time the [Services] Agreement terminates and, Wendelta will have no obligation to LGI.

3

Id.  Leischow testified that the Condition Precedent was "a component of the lease."  Leischow Dep. 14.

On November 13, 2008, LGI and Gaia signed an Agreement for Purchase and Sale of Equipment and Assignment of Lease and a Bill of Sale and Assignment whereby LGI transferred its interest in the equipment and lease payments to Gaia.  In a letter dated December 10, 2008, LGI notified its customers that it had "ceased operations," transferred monitoring to a new entity and encouraged customers to contact their utility companies to ensure continued service.  Dep. Ex. 49.  In December or January, Wendelta notified Gaia member Douglas Hipskind about the unmet savings contingency.  Volpe Dep. 114-15.

LGI's creditors filed an involuntary bankruptcy petition under Chapter 7 on February 6, 2009.  See In re LGI Energy Solutions, Bky. No. 09-40665 (Bankr. D. Minn. Feb. 6, 2009).  LGI provided minimal services from December through May 2009, and did not meet the Condition Precedent by March 16, 2009.  On March 16, 2009, Wendelta informed Gaia that it was refusing acceptance: "We had a conditional agreement with LGI under which we would not accept delivery of the equipment until we had proven savings in excess of 10%.  Lacking that and LGI's status being in question, we have refused delivery and requested the equipment be removed and terminated our agreement."  Dep. Ex. 116.  LGI ceased all services in May 2009.

On April 17, 2009, Gaia began this action in Minnesota state court, claiming breach of contract. Wendelta timely removed. On December 11, 2009, the court denied Wendelta's motion to dismiss because the Condition Precedent was not properly before the court. The parties filed cross-motions for summary judgment. The court now considers the motions.

**DISCUSSION**

**I.  Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);[2] see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon

---

[2] The court cites the Federal Rules of Civil Procedure in effect at the time of the motions and hearing. Changes effective December 1, 2010, do not affect the outcome of this case.

mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Breach of Contract

Under Minnesota law, a breach of contract claim requires the plaintiff to establish formation of a contract, performance of conditions precedent and a breach.[3] See Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A., 756 N.W.2d 907, 918 (Minn. Ct. App. 2008).

### A. Formation

Gaia argues that LGI and Wendelta formed two contracts on November 10, 2008: one for equipment, consisting of the Lease Agreement and Schedule 1G, and a second contract for services, consisting of the Services Agreement, Savings Agreement and Condition Precedent. In Minnesota, "instruments executed at the same time, for the same purpose, and in the course of the same transaction are, in the eyes of the law, one instrument and will be

---

[3] The documents specify both Minnesota and Mississippi law. The parties identify no outcome-determinative difference between the law of Mississippi and the law of Minnesota. Therefore, the court cites only Minnesota law.

6

read and construed together unless the parties stipulate otherwise" even if "the instruments do not in terms refer to each other." Marso v. Mankato Clinic, Ltd., 153 N.W.2d 281, 288-89 (Minn. 1967); accord Winthrop Resources Corp. v. Stanley Works, 259 F.3d 901, 904 (8th Cir. 2001). The court considers whether documents should be treated as a single contract in light of the intent of the parties manifested at the time of contracting and the surrounding circumstances. Farrell v. Johnson, 442 N.W.2d 805, 807 (Minn. Ct. App. 1989).

In this case, the parties did not stipulate to forming two separate contracts. All documents were executed contemporaneously by the same officers, and LGI presented the documents to Wendelta as a group. The various documents contain references to other documents: the Services Contract references that Lease Agreement and Schedule 1G. Moreover, the nature of the agreement shows that the equipment and services are inextricably linked: service is not possible without the equipment, and the equipment requires monitoring and other services to be effective. As a result, the court determines that a LGI and Wendelta formed a single contract for equipment and services on November 10, 2008.[4]

---

[4] As a result, Wendelta's argument that LGI breached the contract by failing to secure Wendelta's approval of the assignment to Gaia fails. Although assignment of the services part of the contract required "prior written consent of Wendelta," the equipment part of the contract did not require prior approval. See Dep. Exs. 14, at ¶ 24; 41, at ¶ 22. LGI only assigned the
(continued...)

B.  **Performance of Conditions Precedent**

Wendelta and LGI agreed that the contract would terminate and Wendelta would have no obligation if LGI failed to meet the Contingent Precedent. Wendelta also agreed that it could not assert any "defense, set-off or counterclaim" that it had against LGI against an assignee of the equipment. It is undisputed that LGI never met the Condition Precedent.

Gaia first argues that the Condition Precedent has no force because the Lease Agreement is an irrevocable and independent finance lease under Article 2A of the Uniform Commercial Code. "In the case of a finance lease, the lessee's promises under the lease contract become irrevocable and independent upon the lessee's acceptance of the goods." Minn. Stat. § 336.2A-407(1). Promises in a finance lease are effective and enforceable by assignees. Id. § 336.2A-407(2)(a). A finance lease is one in which "the lessor does not select, manufacture or supply the goods." Id. §§ 336.2A-103(g).

Under the Lease Agreement LGI was the lessor of the equipment to lessee Wendelta. Gaia was not the lessor: it is not a party to the contract between LGI and Wendelta and neither Wendelta nor the agent of LGI who negotiated with Wendelta were aware of the existence of Gaia. Wendelta did not select, manufacture or supply

---

[4](...continued)
equipment part of the contract to Gaia, and thus the approval required by the services portion of the contract does not apply.

the goods; LGI did. See Nichols Aff. ¶¶ 3, 4. As a result, the Lease Agreement is not a finance lease as defined by Minnesota law, nor could it become one when assigned to Gaia. Therefore, § 336.2A-407 does not apply. See id. § 336.2A.407 cmt. 6.

Gaia next argues that the Contingent Precedent does not apply because Wendelta's contractual obligation to pay remains under the hell-or-high-water clause. The court will uphold a valid hell-or-high-water clause unless the parties agree upon a condition precedent to performance by the lessee. See IFC Credit Corp. v. Burton Indus., 536 F.3d 610, 614-615 (7th Cir. 2008). In this case, the Condition Precedent acts not as a defense or counterclaim disclaimed by Wendelta, but rather automatically terminated Wendelta's obligations to LGI. By the plain language of the Condition Precedent, once LGI failed to demonstrate savings or provide services, the Condition Precedent triggered the end of Wendelta's obligations.[5] As a result, Wendelta had no obligation to Gaia. Ill. Farmers Ins. Co. v. Glass Service Co., 683 N.W.2d 792, 803 (Minn. 2004) (assignment places assignee in shoes of assignor, and provides same legal rights as assignor).

---

[5] Gaia's argument that LGI did not timely disclose the Condition Precedent is not supported by the record and does not excuse its application. Leischow formed Gaia to be in close relationship with LGI and agreed to "assist [Gaia] with all due diligence inquires reasonably prudent with respect to a Project." Dep. Ex. 22, at § 11.7, ECF No. 50-10.

9

Gaia next argues that the Condition Precedent does not apply because Wendelta frustrated performance. According to Leischow, Gaia could have helped LGI satisfy the Condition Precedent. There is no evidence that Wendelta sought to frustrate or prevent performance of the Condition Precedent. Moreover, LGI ceased almost all operations in December 2008, was in Chapter 7 bankruptcy in February 2009 and by March 16, 2009, three locations had the equipment removed and the equipment was not working at half of the locations. See Nichols Aff. 165. Further Wendelta notified Gaia of the savings contingency in December or January. Therefore, Gaia's argument fails.

Lastly, Gaia argues that the Contingent Precedent does not apply because the second-chance date of June 15, 2009, falls after the April 1, 2009 commencement date of the lease. As a result, Gaia argues, it gained a right to accelerate the entire lease value on April 1, 2009. Gaia's interpretation renders the Condition Precedent meaningless because it would allow LGI to ignore the Condition Precedent yet force Wendelta to pay the full value of the lease. Such an interpretation is contrary to the parties' intent to provide and receive savings through LGI's equipment and services. Moreover, Wendelta revoked acceptance in March when it was apparent that the equipment was not performing, LGI was bankrupt and there was no reasonable likelihood that LGI would perform under the contract. Therefore, the court determines that

Gaia did not gain a right to accelerate payments while the Condition Precedent remained unmet, and its breach of contract claim fails.

**IV. Attorneys' Fees**

Lastly, Gaia seeks $120,516.12 in costs and attorneys' fees under the contract. The contract allows reasonable costs and fees when a lessee breaches the contract. Here, the court has determined that Wendelta did not breach the contract. Therefore, Gaia is not entitled to costs and fees.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment by Gaia [ECF No. 37] is denied; and

2. The motion for summary judgment by Wendelta [ECF No. 42] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 23, 2010

s/David S. Doty
David S. Doty, Judge
United States District Court
